**REPUBLIC INS. CO. v. MOSS.    (No. 8581.)**

(Court of Civil Appeals of Texas. Dallas. Nov. 12, 1921. Rehearing Denied Dec. 17, 1921.)

**1. Insurance ⬅145(1)—Conversations with agent held insufficient to show agreement with agent for insurance or renewal of policy.**

Where the agent's written commission limited his authority to written contracts of and for insurance, an agreement for insurance between insured and the agent several years before the loss of insured's property by fire, and casual inquiries by the insured from time to time as to whether insurance was in force, held not to constitute a binding agreement of issuance or renewal of insurance so as to cover loss in February, where the last written policy in defendant company had expired the preceding May.

**2. Insurance ⬅145(2)—Agent held unauthorized to agree orally to renewals.**

Where insurance company issued no policies except written ones, and policy issued to plaintiff contained an explicit provision that policies might be renewed "in consideration of premium for the renewal term," and an agent's commission expressly withheld from him authority to make verbal contracts of or for insurance, the agent had no authority, actual or apparent, to make an oral agreement for insurance or for renewal of insurance.

**3. Insurance ⬅645(5)—Variance between allegation of request for renewal of policy and proof fatal.**

In an action to recover for a fire loss, an allegation that plaintiff had requested of defendant's agent a renewal of a policy expiring May 5, 1919, such request having been acceded to and the premium for renewal having been accepted by the agent, being met only by substantial proof of the indefinite expression by plaintiff of a desire that insurance on the property be kept up, the variance is fatal.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by G. H. Moss against the Republic Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Coke & Coke, of Dallas, for appellant.
Miller & Miller, of Athens, for appellee.

HAMILTON, J. This is an appeal from a judgment whereby appellee recovered upon the finding of a jury that a parol agreement existed between appellee and appellant's agent previous to May 5, 1919, that the former's insurance would be kept in force another year after said date, upon which a written policy of insurance expired.

[1] In February, 1912, the Commonwealth Fire Insurance Company was engaged in the fire insurance business in Texas. J. F. Austin was then, and continuously thereafter, its agent at Frankston, Tex., until May 2, 1919, when it was dissolved as a result of its consolidation with two other companies; the three merging into and becoming Republic Insurance Company, under the provisions of chapter 57, Acts 36th Legislature. After the dissolution of the Commonwealth Fire Insurance Company, Austin became the agent at Frankston of Republic Insurance Company. The Republic Insurance Company was created on the date the Commonwealth

Fire Insurance Company was dissolved, and there seems to have been a transfer of Austin's agency from the latter to the former without any interruption of continuity. Austin was also the agent of other insurance companies during the period from 1912 until the asserted cause of action arose in February, 1920. During the same period he was also engaged in, or in some way connected with, the banking business in Frankston, and it seems that the insurance business was conducted in the same building the bank occupied.

In 1912 appellee constructed a residence in Frankston and made a contract with Austin to insure it against loss by fire. Appellee on that occasion went to Austin's office and told Austin he was ready for insurance; that he never wanted to be without it; and instructed Austin that when the first policy expired to rewrite it. Austin assented to what appellee said and gave him to understand that the property would be insured and kept insured. The conversation expressed the only transaction ever had between appellee and Austin for fire insurance on the building. No subsequent agreement for insurance was ever made.

As a result of the understanding then arrived at, a policy on the building and furniture was written. This policy was issued by the Commonwealth Fire Insurance Company. The policy expired at the end of a year from its date and appears not to have been renewed upon its expiration. Subsequently a policy dated March 2, 1914, and expiring March 2, 1915, was issued by Austin as agent of the same company. Upon its termination this policy was renewed, or at least a policy was issued on March 2, 1915, expiring March 2, 1916. At the expiration of this policy there was no renewal. A policy seemed to have been issued May 5, 1918, which expired May 5, 1919. This was not renewed. No other policy was written thereafter, and the property was destroyed by fire on February 19, 1920. All the policies which had been written and issued upon it by Austin · were policies in Commonwealth Fire Insurance Company.

No policy was ever delivered to appellee. No specific payment of a premium was ever made by him independent of periodical general business settlements with Austin. Appellee was a practicing physician. He was Austin's physician. He relied altogether upon Austin to issue policies and keep alive the insurance. He expected Austin to keep the policies in his safe and look after renewals, forwarding his own funds to the company in payment of premiums and receiving from appellee reimbursement at irregular intervals when general settlements of accounts were made between them. These settlements were sometimes separated by the space of a two-year period of time, it seems. Some of the settlements would show a balance in favor of Austin and others would disclose a balance in appellee's favor. Accounts were squared accordingly.

Appellee paid no attention to the payment of premiums at regular intervals, because, as he testified, he expected Austin to pay the premiums to the company and credit him for them. He did not expect the company to credit him, and there was no understanding that it would. No premium was ever paid or tendered to the company for insurance beyond May 5, 1919, the date the last policy expired.

Each year appellee made inquiry of Austin about whether or not he was keeping up the insurance, and thus called Austin's attention to it because he was afraid he would forget it.

Appellee gave the following testimony:

"During 1918 and 1919 I had similar conversations with Mr. Austin to what I had every year; just go and inquire if he was keeping up my insurance; that I wanted him to rewrite it when the time came for him to rewrite it. The day the public school burned in Frankston as we walked away I remarked to him that it reminded me of my own insurance and was it in force, and, as I remember, his answer was that he supposed so, or he thought so, or something to that effect; this schoolhouse conversation occurred, I think, in November, in the fall of last year (1919); I don't believe I had any other conversation with him since then in respect to his keeping up this insurance since November, 1919.

"In January or February, I am pretty sure it was January, we had a conversation in regard to it every year in the early part of the year, and in January or February of this year, in fact, if anything, it was that I expected it rewritten and asked him to rewrite it, as he had been doing. In the January, 1919, conversation I remember distinctly that I called to see him with reference to a life insurance policy that was about to lapse and asked him about his carrying it for me; he asked me the amount; I didn't remember the amount and he asked me to look it up and he would decide whether he would carry it for me, or something to that effect, and I remember remarking to him that I might not carry it; might drop it; that I had other insurance; might not need that; "but my fire insurance, I want that kept up;" he said, "Sure," or something to that effect.

"That policy expired 5th of May, 1919, and my property did not burn until the 19th of February, 1920, about nine months later; this is the last policy I know of the Commonwealth that I had; after talking with Mr. Austin he told me that he neglected to issue it; I don't claim there was any other issued, but I claim there should have been. I talked with Mr. Austin in November, 1919, when the fire occurred at Frankston that burned up the school building; that was six months after that policy had expired; the school building burned and made me think of it; I thought of it every year about the first of the year; I would think of it when something burned; as we came away from the schoolhouse fire, I said, in substance, that 'When we have a fire, I am reminded of my own insurance, and is my insurance in force?' 'You are keeping it up; I suppose you rewrote it?'

or something to that effect; and 'It is still in force.' 'Is it or not?' And my recollection is that his answer was something like this, 'I think so;' and it seems to me he said he would look into it; not certain about that, but pretty sure that he agreed to see that it was, but won't say that; I don't know that is true. I did not pursue the matter further the next day and did not pay any further attention to it.

"As to any specific agreement with Mr. Austin for the renewal of this policy that expired on the 5th day of May, 1919, I don't know as I would call it a specific agreement; it was the same agreement we had every year, practically the same; I called his attention to it; in fact, my agreement, or the original agreement that he made with me to keep this policy in force, was satisfactory to me; I never would have called his attention to it if I hadn't thought he had forgotten it. I only went there every year and inquired when I would think of it; I never had but one agreement with him; that was the original agreement I had when I took my policy out and told him I wanted to keep the property insured; I claim to have had a separate agreement each year; that was the original agreement I had and the agreement each year to keep that in force was the other agreement we had after that.

"Regarding the policy dated May 5, 1919, I only recall one conversation prior to May, 1919; that was in the early part of last year some time before this policy expired. I just casually mentioned it to him there at the window one day, something in connection with some other settlement we were about to make; I stated to him that I wanted the insurance kept up; that is the only conversation I recalled at that time prior to the expiration of the policy in May; all I remember it was something about a life insurance policy that I wanted carried possibly, and I said, 'The fire insurance, I want that kept up;' and he said, 'Yes; sure.'

"Now as to upon what plan and how and with whom and in what manner I claim this agreement to insure me from May 5, 1919, to May 5, 1920, was made, I answer, the agreement was made the first time this insurance was taken out, way back yonder, and then the only reason that I stated I ever inquired or asked Mr. Austin about it was to see if he didn't overlook it. The agreement that we originally made was the agreement that I have relied on all the time, the original agreement and only agreement; we didn't make any agreement every year; made the agreement that he was to keep this up every year, and I wouldn't have mentioned it to him yet if it had not been that I would think of it every year and wonder if he was keeping it up, and the only reminder of it in January, 1919, was when we were discussing this life insurance; the agreement for this insurance that ran from May 5, 1919, to May 5, 1920, was made seven or eight years ago, the original agreement. I never became aware that this policy from May 5, 1918, to May 5, 1919, was about to expire until after the fire; that was the first time I knew that that policy hadn't been rewritten. I did not have a conversation with Mrs. Watkins (sister of Austin, to whom Austin had largely turned over the insurance business), some time prior to the expiration of this policy May 5, 1919; she might have mentioned it; she might have called my attention to it some time when I was in a hurry, had

something else on my mind, and I wouldn't remember it; I wouldn't say she didn't mention it to me; just say I don't remember it.

"The last time I inquired, in January, 1919, I had a policy; this policy was then in force; they were almost always in force every time I would inquire. The original agreement for this insurance from May 5, 1919, to May 5, 1920, was made some seven or eight years back; that was the only agreement I felt like I had when I went to the bank and made the inquiry whether he was keeping it in force or not; the substance of that agreement in January, 1919, was that I wanted the policy kept up just as it had been.

"Now, about taking out additional insurance. I did not take additional insurance up with him, but it was after I had the conversation with him in January or thereafter I intended taking it up with him before he renewed this policy, but never did do it; it was my intention to take out this additional insurance; while I was satisfied he would write the policy like he had been doing it, while I intended to think of it and have him increase it, I never thought of that any more; never mentioned it."

The policy which expired May 5, 1919, the last one issued to cover the property for the destruction of which liability is asserted, was what is generally known as "Texas standard fire policy." It contained this sole provision with reference to renewals:

"This policy may by a renewal be continued under the original stipulations in consideration of premium for the renewal term, provided that increase of hazard must be made known to this company at the time of renewal or this policy shall be void."

The proof shows without contradiction that the method of insurance regularly pursued by the company was by written policy, and that no officer, agent, or other representative of the company had any power to waive any provision or condition of the policy—

"except such as by the terms of the policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The written commission issued to Austin by Commonwealth Fire Insurance Company of Texas authorized him to receive proposals for insurance, to fix rates of premium to be charged therefor, subject to the approval of the officers, to collect moneys due the company for premiums, and to countersign, issue, and renew policies of insurance signed by the president and attested by the secretary of the company subject to the rules and regulation of the company, and such instructions as might from time to time be given by its officers or other authorized repre-

sentatives, but without authority to make verbal contracts of or for insurance. The president of the Republic Insurance Company testified that all the policies of insurance were in writing, and that no agent was authorized, either in writing or verbally, to insure property without a written policy. Austin testified that he had no authority to insure property except by a written policy.

All the foregoing facts are undisputed. The record contains none other which could modify the only conclusion that must be derived from these facts as they are above stated. That they are inadequate to sustain the recovery we think is manifest. From the mere statement of them the inescapable conclusion arises that no liability against appellant could be founded upon them.

We treat the case as if the Commonwealth Fire Insurance Company had never existed and all transactions from the beginning had been with Austin during a period throughout which he was authorized to write fire insurance policies as agent of Republic Insurance Company. This company became substituted for the Commonwealth as to any liability under contracts of insurance or contracts to insure. Chapter 57, Acts 36th Legislature.

Whatever agreement may be found in what was said and done was no more than an agreement by Austin individually to renew each policy as it expired; and, conceding for the moment that Austin was clothed with authority under all the facts and circumstances of the case to bind appellant by parol contracts of insurance, yet we think the conduct, conversations, and relations between appellee and Austin reflected by the record would not, in any event, constitute a valid obligation upon appellant's part. The original discussion between appellee and Austin amounted to no more than an understanding upon the former's part that a policy of insurance should be issued in an agreed sum to cover the property, and that Austin for appellee would see to it that the property was kept insured. The understanding was definite and explicit only as to the amount of the policy. The agent was left to determine the date upon which the first policy issued should expire. It was left to him to see that the premiums should be remitted to the company, whether paid or not by appellee. It was left to him, upon the expiration of the first policy or upon the expiration of any subsequent policy, to place the insurance in any one of the companies he represented; he alone, by the terms of the understanding which appellee declares arose when he first applied for insurance, was intrusted with performing necessary subsequent requirements from time to time to keep the property insured through the indefinite future. Appellee expected to make settlement for premiums at such irregular and indefinite dates as the course of dealings between himself and Austin individually, and not between himself and Austin as appellant's agent, might dictate. Under the entire record, we do not think the casual inquiries as to whether or not the insurance was in force, as testified to by appellee, affected any contractual relations with appellant; such inquiries and the responses made to them by Austin were not such as to constitute new agreements for the issuance or renewal of insurance policies by appellant. These conversations, instead of constituting contracts, were merely talks incidentally relating to the proposition of whether or not the contract of 1912, which appellee testified was the only one he ever had with reference to insurance, was being carried out in compliance with what he contended to be its provisions. The loose, vague, and indefinite understanding revealed in the testimony of appellee, and by reliance upon which he seeks to hold the appellant liable, is lacking in the substantial attributes of a contract binding appellant, even if it be conceded that Austin was clothed with power to extend insurance in any contingency without a written policy.

The *question presented is purely one of fact, and the evidence is lacking in probative force essential to establish facts constituting a binding agreement of insurance with appellant in existence at the time of the loss of the property, or to render appellant liable under an executed agreement to insure or renew insurance. Westchester Fire Insurance Co. v. Robinson, 192 S. W. 793; Ætna Insurance Co. v. Richey, 206 S. W. 383; Benner v. Fire Ass'n of Philadelphia, 229 Pa. 75, 78 Atl. 44, 140 Am. St. Rep. 706; American Can Co. v. Agricultural Insurance Co., 12 Cal. App. 133, 106 Pac. 720; Gresham v. Norwich Union Fire Insurance Society, 157 Ky. 402, 163 S. W. 214.

[2] We think it is clear that Austin had no authority whatever to make such contract as appellee contends was made. If such understanding, arrived at within the scope of authority, could be enforced at all, still in this case it was beyond the scope of Austin's authority, either actual or apparent, to make an agreement of the kind asserted, so as to bind appellant. The proof shows, without any dispute whatever, that the company issued no policies except written ones. The policy issued in 1918 contained an explicit provision relating to renewals, as is above set out in our finding of facts. There is no attempt to show that Austin had any authority to execute any renewal otherwise than in writing. That Austin had no authority whatever to make a parol contract of insurance is undisputed. The terms of the policy, the language of Austin's commission, and the testimony of Austin and the president of the company, we think, conclusively establish the proposition that Austin was clothed with no authority whatever to de-

part from the universal custom of insuring property solely by written policy as practiced by appellant and other insurance companies, and make the unusual character of agreement contended for by appellee. Westchester Fire Insurance Co. v. Robinson, supra; Ætna Insurance Co. v. Richey, supra; Struzewski v. Insurance Co., 226 N. Y. 338, 123 N. E. 661; Insurance Co. v. Schulman, 140 Tenn. 481, 205 S. W. 315.

[3] Furthermore, we are of the opinion that there is a fatal variance between the allegations and the proof. The most favorable view which can be indulged in behalf of the petition upon which appellee sought relief and recovered judgment is that it states a cause of action against appellant because appellant's agent, Austin, failed to renew the written policy of insurance issued the 5th day of May, 1918, to expire on the 5th day of May, 1919; such renewal having been requested of the agent Austin by appellee, and the request having been acceded to and the premium for the renewal having been accepted by the agent. There is no proof in the record commensurate with the allegation just above stated. The proof shows that no definite understanding for renewal of the policy was had, and no premium was tendered or paid. It is true that a policy of insurance may be renewed, under certain circumstances, without the payment of renewal premium and without the issuance of a renewal policy, notwithstanding the rules of the company restrict such renewals to written transaction, but the circumstances of this case do not result in such legal effect. The evidence reflects a more or less indefinite inquiry by appellee, made some time before the policy expired, as to whether or not the property was covered by insurance, and in the same connection the agent was told that appellee desired that the property should be kept insured continuously. Almost 11 months thereafter the property was destroyed by fire, and to say that it was insured at the time of its destruction would be to construe the above-mentioned expressions of inquiry and desire, together with the replies of the agent, into a binding contract, notwithstanding the agreement arising at the time, if it be conceded that one did arise from what was said and done, was left in parol without the payment or tender of premium for a period of nearly ten months after the last written policy had expired, although the policy approaching expiration when the inquiry was made was in writing and contained an express provision that it should be renewed only by written renewal. Besides, such construction of the evidence would also leave out of account appellee's positive testimony that he had no understanding with the agent except that arising from the conversation in 1912 at the time the property was first insured.

Further discussion is unnecessary. The authorities in this state and the great weight of authority everywhere being to the effect that the facts established in this case impose no liability whatever upon appellant, the trial court should have instructed a verdict as requested by appellant. Accordingly, it is our duty to reverse the judgment of the court below and here render judgment for appellant.