COLUMBIAN NAT. FIRE INS. CO. et al. v. DIXIE CO–OP. MAIL ORDER HOUSE et al. (No. 8438.)*

(Court of Civil Appeals of Texas. Galveston. March 14, 1924. Rehearing Denied April 17, 1924.)

1. **Insurance** �köm⟶365(1) — **Under policy no authority in local agency to reinstate it after cancellation.**

Under policy expressly limiting authority of soliciting agent, in absence of written consent of president, secretary, or treasurer, to delivering policy and receiving premium, it being canceled by the company for nonpayment of premium, local agent could not reinstate it by receiving premium.

2. **Insurance** ⊜⟶78 — **Limitation in policy of agent's authority, notice to insured.**

Insured is charged with notice of limitation of authority of soliciting agent, expressly stated in policy.

3. **Insurance** ⊜⟶365(1)—**That insured did not know of revocation of agency of local agent paid to reinstate policy held immaterial.**

The local soliciting agent having, by terms of policy, no authority to reinstate policy canceled by company for nonpayment of premium, it was immaterial that insured when making payment to him for such reinstatement did not know his agency had been revoked.

4. **Insurance** ⊜⟶365(1)—**Necessary showing to establish reinstatement of policy stated.**

To establish reinstatement of policy, forfeited by company for nonpayment of premium, in addition to payment to local agent, by terms of policy having no authority to reinstate, it would be necessary to show company received and retained the money with knowledge of purpose for which it was paid.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted June 12, 1924.

**5. Insurance ☞603 — Further recovery not prevented by release and receipt in full on mutual mistake as to number of companies liable.**

Release and receipt in full by insured to insurers on their paying the amounts agreed on as their proportions of the fixed loss, having been under mutual mistake that another company was also liable on the loss, will not prevent further recovery from them.

**6. Release ☞13(4) — Part payment of fixed sum due insufficient consideration.**

Where a fixed sum is due, release in full on payment of part is without consideration as to the unpaid portion.

**7. Insurance ☞579—Facts held not to constitute compromise, but agreement on method of ascertaining loss.**

There is no compromise as to amount of loss by fire, but mere agreement as to method of ascertaining it, where value of insured stock before fire is conceded; but, there being dispute as to amount of loss, it is agreed that insurers shall pay amount of such value, and shall receive proceeds of sale of damaged stock.

**8. Insurance ☞504—Canceled policy not "invalid policy," within provision of other policies as to proportional liability.**

Policy canceled before fire for nonpayment of premium is no insurance, and therefore is not an "invalid policy," within provisions of other policies for liability proportional only to the "whole insurance, whether valid or not * * * covering such property."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invalid.]

**9. Insurance ☞598—Interest not chargeable from date of fire.**

Insurer should not be charged interest from date of fire, but only from 60 days after proof of loss, the time loss was payable by provision of policy.

**10. Garnishment ☞191 — Sum allowed garnishee for filing answer held part of costs against unsuccessful defendants.**

The sum allowed garnishee for filing answer in the garnishment proceedings, which were auxiliary to the main suit, *held* properly charged against the unsuccessful defendants as part of the costs of the suit.

Error from District Court, Harris County; W. E. Monteith, Judge.

Action by the Dixie Co-operative Mail Order House against the Columbian National Fire Insurance Company and others. Judgment for plaintiff against all but one of defendants, and they bring error. Reformed and affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, and Thompson, Knight, Baker & Harris, of Dallas, for plaintiffs in error.

Taliaferro & Sonfield, of Houston, for defendant in error.

PLEASANTS, C. J. This suit was brought by defendant in error, hereinafter styled Dixie Company, against the United Mutual Fire Insurance Company and nine other fire insurance companies, hereinafter named, to recover the sum of $6,810.29, alleged to be loss caused by fire to property of plaintiff upon which each of the defendants had issued policies of insurance. The following statement of the substance of the petition is taken from plaintiff in error's brief:

"The Dixie Company sued the United Mutual Fire Insurance Company, Northern National Insurance Company, Law Union & Rock Insurance Company, American Insurance Company, Boston Insurance Company, Concordia' Fire Insurance Company, Columbia National Fire Insurance Company, Georgia Fire Underwriters, Liberty Fire Insurance Company, and Royal Exchange Assurance Company, alleging that plaintiff, Mail Order House, insured its goods against loss by fire, in the defendant companies, these contracts being issued prior to November 6, 1920, on the dates set out in the several policies. These policies were issued and delivered in consideration of premium and for a period of one year, and aggregated the sum of $68,000.00; the numbers of the policies, names of the companies, and the amount of insurance in each company being particularly described. Plaintiff further alleged: That a fire occurred November 6, 1920, and damaged the property described in the policies, this property being of the value of one hundred thousand dollars. That after the fire, the companies were notified and each of them except the United Mutual Company, recognizing its liability, employed adjuster to act for it on the loss. At the request of the companies, except the United Mutual Company, the Underwriters' Salvage Company made an inventory of the property to arrive at the amount of loss sustained, which inventory was completed and showed the amount of loss sustained to be $46,310.00. The United Mutual Company failed to participate in the adjustment, alleging that it was not liable for the loss, because its policy had been canceled prior to the fire for nonpayment of the premium. Plaintiff and the companies, except the United Mutual Company, agreed upon the sum of $46,310.00 as the amount of the loss sustained by plaintiff. That, in consideration of the payment by the defendants to the plaintiff of that sum, the salvage from the fire should be taken over by the companies, and sold at public auction and the money received from the sale apportioned between them. The United Mutual was notified of this agreement, made no objection to it, and pursuant thereto Underwriters' Salvage Company sold the property and apportioned the same among the companies as to the amounts due each, except that the amount due the United Mutual has been retained by the Underwriters' Salvage Company. * * *

"Proofs of the loss were furnished as to all companies and that at the time of the fire, and of the giving of the notices of the same, plaintiff believed that there were ten policies outstanding, aggregating $68,000.00, these being the policies described in the petition. That upon the assumption that the United Mutual was liable, notwithstanding its denial of liability, the liability of the several companies was apportioned as set out in the petition, to show

an aggregate due of $46,310.00; the charge against the United Mutual being $6,810.29. That, at the time of making this apportionment, it was understood between the plaintiff and the companies that if the United Mutual was not liable then the remaining companies would be proportionately liable for the sum assessed as the liability of the United Mutual and this was the understanding at the time the proofs of loss were executed wherein the United Mutual liability was set forth at $6,810.29. That the companies in accordance with their agreement paid to the plaintiff the several sums of money assessed against them, aggregating $39,499.71, with the understanding at the time of the payment that they would be liable for additional $6,810.29, if it was held that the United Mutual was not liable. That the companies having agreed as to the amount of the loss and having paid the sums of money agreed, are estopped to deny that their liability is not in the sum pleaded, and also estopped to deny liability for the payment of $6,810.29, with interest, if it should be held that the United Mutual is not liable. The acceptance by the plaintiff of a less amount than the entire sum cannot bar recovery for the balance due them; the receipt or release in full for the amount less than the entire sum due is without consideration. That on or about April 15, 1920, the plaintiff contracted with the United Mutual for a fire policy describing its stock, the policy being No. 94012, which was duly executed by the United Mutual, bearing date April 15, 1920, for the term of one year, and being in the amount of $10,000.00. That the consideration for the policy was $109.00, which premium was paid on January 21, 1920, as evidenced by its check which was received by the local agents issuing the policy, indorsed by them and collected, the money delivered over to the United Mutual, which accepted payment and has never tendered plaintiff any part thereof. That this policy provides that in case of cancellation notice of cancellation must be sent in writing to the assured and the plaintiff denied that it got any notice of cancellation prior to the fire. It alleged further that, by the acceptance of the $109.00, any forfeiture of the policy was waived. Plaintiff demanded from the United Mutual the sum of $6,810.29 and it refused to pay same, to the plaintiff's damage in that sum.

"Plaintiff further alleged: That if the court should hold the United Mutual was not liable, then that the remaining companies were liable for $6,810.29. That if the United Mutual is not liable, then, at the time of the fire, there were only nine policies outstanding and in force protecting plaintiff's property in the aggregate sum of $68,000.00, so that plaintiff was acting under a mistake of fact in believing that there were ten policies outstanding at the time of the fire, and that, at the time of making proofs of loss and accepting payment from the defendant companies, plaintiff was under the belief that the United Mutual was in fact liable for the loss. Plaintiff further alleged: That, if the court should hold that the United Mutual was not liable, then that the proof which it made to the defendant companies did not set forth their correct liabilities; that if these proofs had been correct they would have set forth the aggregate liability of defendant companies at $46,310.00, instead of $39,499.71, and that if the United Mutual is not liable any

release executed by plaintiff to these companies upon payment by them of a sum less than the amount agreed upon as the loss sustained by plaintiff cannot bar a recovery for the balance due. Plaintiff further alleged that if the court should hold that the United Mutual was not liable, that it should have judgment against it for $109.00, with interest, same being the amount paid to that company as premium upon this policy. It further alleged that if the court should hold none of the defendants liable, then it should have judgment for $2,182.87, being the proportion of the salvage now held by the Underwriters' Salvage Company, as above described. Plaintiff prayed for a judgment against the United Mutual for $6,810.29 and interest, or in the alternative, if that company was not liable for that sum, then for $109.00 and interest. That in the event plaintiff should have judgment against the remaining companies for $6,810.29 and that the $2,182.87 held by the Underwriters' Salvage Company should be turned over to the plaintiff and that sum credited against any judgment which the plaintiff might receive."

The Salvage Company, which was brought into court by garnishment proceedings, answered that the proportionate part of the money derived from the sale of the damaged stock set apart to the United Mutual Insurance Company was held by the Salvage Company subject to the order of the court.

All of the insurance companies, except the United Mutual filed joint answers, the material portions of which are thus summarized in plaintiff in error's brief:

"That these defendants were informed that a loss occurred on November 6, 1920, and pursuant to this notice, the loss was adjusted with the plaintiff and pursuant to this adjustment, the assured made proof of loss to the defendants, copy of the proof being attached, and marked 'Exhibit A,' this being the proof furnished to the Liberty Insurance Company; like proofs being furnished to each of the other companies, identical in terms with the exhibit, except as to the policy number, amount of policy, the date of its expiration and the amount claimed against the company, the policy numbers and the amounts of the policies and the dates of expiration being as above set out. That in the proof the plaintiff agreed to accept from the American Insurance Company, $1,362.06; the Boston Insurance Company, $8,512.58; the Concordia $3,064.68; Georgia Fire Underwriters, $1,021.55; Law Union & Rock, $6,810.29; Northwestern National, $3,405.14; Royal Exchange, $10,215.44; and the Liberty, $3,405.14. Pursuant to these proofs of loss so made, each of the companies forwarded its draft to the plaintiff for the sum of money above mentioned, each draft provided in substance that it was in full settlement, final satisfaction and discharge of all claims under the particular policy described therein on account of damage by fire occurring on November 6, 1920, to the property described in the policy; that the policy was thereby canceled and surrendered. That these said payments so made constitute payments in full and releases in satisfaction of the claims of the Dixie Co-operative Mail Order House against each of these several companies."

The defendants pleaded such release, and discharge so given them in bar of the plaintiff's suit, and prayed judgment thereon.

"Defendants further prayed that if any liability should be found against them, that there should be set off as against said liability the sum of $2,182.87, held by the Underwriters' Salvage Company. Defendants further alleged: That the policy which they issued provided that all insurance, whether valid or not, should prorate on the loss. That if in fact the policy of the United Mutual is void, the same should nevertheless prorate with these other policies. They alleged further that the United Mutual, being liable to the plaintiff and the plaintiff asking no relief against them in the event the United Mutual was liable, that plaintiff take nothing. * * *

"The Columbian National Insurance Company filed a number of special exceptions, a general denial and specially denied allegation with reference to the employment of J. B. Hines as adjuster, saying that Mr. Hines was only employed to investigate the loss. It denied that settlement was made by it with the plaintiff and denied that the release given it was made on any condition or understanding, but on the contrary was an outright full release and settlement without qualification. It alleged on December 20, 1920, it paid off and made settlement and payment with the plaintiff, and the plaintiff executed release to it at that time. It alleged that the plaintiff's rights in the policy were surrendered December 20, 1920, for valuable consideration, which was the payment of $1,702.58. It alleged that the policy provided that the company should not be liable for more than its pro rata of the loss. It alleged that the defendant has paid to the plaintiff the sum of $1,702.58 and that sum was the full part and proportion for which the defendant could have been liable under its policy, and constituted its full proportion of the alleged loss, and having paid its proportionate part, discharged the terms and provisions of its policy, and should be entitled to judgment. * * *

"The United Mutual Insurance Company filed general demurrer, general denial, and specially set up the provisions in its policy with reference to cancellation, alleging: That the premium on the policy was never paid to it, and that the policy was canceled by it on or about June 5, 1920, long before the fire, and that on that date the premium had not been paid, and that it mailed to the plaintiff by registered mail notice advising that the policy was canceled, which cancellation would become effective five days from the receipt of the notice. That the plaintiff got the notice June 7, 1920, so that the policy became canceled on June 12, 1920. On June 5, 1920, it revoked the agency of the local agents who had issued its policy so that thereafter they were not authorized to act for the defendant. That the policy having been canceled some time before the fire, even if the plaintiff paid to these local agents the $109.00 premium alleged, the same was received by these said agents, if at all, without the knowledge of the defendant, or its consent. That the defendant received no part of the premium and the said agents had no authority at that time to reinstate the defendant's policy. Under the terms of the policy same was then null and void and was not restored. * * *"

261 S.W.—12

The trial in the court below without a jury resulted in a judgment that the plaintiff take nothing against the United Mutual Company and that the plaintiff recover of the other defendants judgment for the specific amount against each which aggregates $6,810.29, upon which should be a credit to each of these companies of a named amount, these credits aggregating $2,182.87; that the plaintiff recover from the Underwriters' Salvage Company the sum of $2,182.87 and costs of garnishment proceedings, to be taxed against the companies other than the United Mutual; that the sum of $100 allowed the Underwriters' Salvage Company as fees should be taxed as costs against the defendants herein.

Under appropriate assignments and propositions plaintiffs in error first assail the judgment against them on the ground that upon the undisputed evidence the United Mutual Insurance Company was liable to the defendant in error, and therefore no recovery could be had under the pleadings and evidence against plaintiffs in error.

The ground upon which it is contended liability is shown against the United Mutual Company is that the premium on the policy issued by said company to defendant in error was paid to the agent of the company from whom the policy was received subsequent to its attempted cancellation, and such premium not having been returned or offered to be returned to defendant in error, even if the person to whom the premium was paid was not the agent of the company at the time of such payment, defendant in error had no notice of the fact that authority of the agent had been revoked and payment to such former agent was payment to the company, and it cannot, without returning or offering to return the premium, deny liability upon the policy.

The agreed statement of facts contains the following:

"On April 15, 1920, the Parlati & Del Barto Insurance Agency were the duly authorized agents of the United Mutual Fire Insurance Company. On that date, through that agency the plaintiff contracted for a one-year fire insurance policy. The policy was issued, and was for $10,000.00 (ten thousand dollars) and described the plaintiff's stock. The premium on the policy was $109.00 (one hundred and nine dollars) and was not promptly paid to the agents issuing the policy.

"On June 5, 1920, the United Mutual Company notified the plaintiff by registered letter that the policy had been canceled for nonpayment of the premium. This notice was received June 7, 1920. This letter provides: 'Please take notice that your policy of insurance No. 94012 issued by the United Mutual Fire Insurance Company through Parlati Insurance Agency, its agents at Houston, Texas, and dated the 15th day of April, 1920, is hereby canceled and that five days after this notice the same will close and be of no effect. * * *

"On June 21, 1920, the plaintiff sent to Parlati & Del Barto Insurance Agency its check

for $109.00 in payment of the premium under policy No. 94012. This check was cashed by said agency. Neither this sum nor any part of it has been refunded to plaintiff. At the time the check was sent, the agency of Parlati & Del Barto had been revoked by the United Mutual Fire Insurance Company."

The policy contains the following provisions:

"10. This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid in cash, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium, returning the balance to insured upon his surrendering this policy, to the company at Houston, Texas."

"26. The agents of this company, other than the president, vice president, secretary or treasurer, have no authority to represent it unless authorized by one of said officers in writing, except in the solicitation of applications for insurance, and, if the home office shall issue a policy upon such application, the soliciting agents have authority to deliver said policy and receive in payment the amount of the premium. But no agent of this company, except the above-named officers at the home office, has any authority to grant any extension of the payment of any premium hereunder, or make any agreement other than herein contained with reference thereto, or to renew or extend this policy if it should lapse for any cause, or to waive, change or alter any of the provisions, stipulations and conditions in said policy, without the written consent of one of the above-named officers, all of which is hereby mutually understood and agreed."

It is not shown that the defendant in error had notice of the revocation of the agency of Parlati & Del Barto Insurance Agency at the time the check for the premium was sent to said agency.

There is no evidence that the United Mutual Insurance Company received any part of the $109 paid to Parlati & Del Barto, or knew that such payment had been made.

[1, 2] We think it clear, under the provisions of the policy before set out, that if the agency of Parlati & Del Barto had not been revoked at the time the premium was paid to them they would have had no authority to accept the premium and reinstate the canceled policy. Defendant in error must be held charged with notice of the limitations upon the authority of the agent appearing upon the face of the policy, and could not hold the company bound by any express or implied agreement which the agent was not authorized to make. Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Ins. Co. v. Mize (Tex. Civ. App.) 34 S. W. 670; Ins. Co. v. Wagner,

10 Tex. Civ. App. 398, 30 S. W. 959; Ins. Co. v. Elmore (Tex. Civ. App.) 226 S. W. 713.

[3, 4] This being so, it necessarily follows that it is immaterial that defendant in error did not know at the time it paid the premium to Parlati & Del Barto that their agency had been revoked. If it had been shown that the United Mutual Company received this premium and retained it with the knowledge that it was paid for reinstatement of the canceled policy, the company would not be heard to say that the policy had not been reinstated; but, in the absence of this showing, the conclusion of the trial court that there was no reinstatement of the policy must be sustained.

[5] It is next insisted that the judgment should be reversed because defendant in error had executed to each of plaintiffs in error a release in full for the amount due upon each of the policies upon which the suit is brought.

The agreed statement of facts contains the following:

"That the amount of said loss was fixed at forty-six thousand three hundred and ten ($46,310.00) dollars, and this amount was agreed to as the amount of the loss by each and all of the above-named insurance companies and the Dixie Co-operative Mail Order House. * * * That said nine (9) insurance companies, exclusive of the United Mutual Fire Insurance Company, and the Dixie Co-operative Mail Order House, agreed that said loss amounted to forty-six thousand three hundred and ten ($46,310.00) dollars. That said loss did amount to the said sum of forty-six thousand three hundred and ten ($46,310.00) dollars. * * * That at the time of agreeing on the amount of said loss and submitting proofs of loss to the above-named insurance companies both the said insurance companies and the Dixie Co-operative Mail Order House believed that there were at the date of this fire outstanding and in full force and effect ten (10) policies of insurance in the total sum of sixty-eight thousand ($68,000.00) dollars."

It is further shown that by agreement between plaintiffs in error and defendant in error the stock of goods was turned over to the Salvage Company to be sold by it and the proceeds apportioned among the companies liable for the agreed loss of $46,310, and that defendant in error was to receive from each of said companies its proportionate part of the loss. This agreement was carried out in good faith, and each of the plaintiffs in error paid to defendant in error what was then supposed by all of the parties to be its proportionate part of the agreed loss and received from defendant in error a receipt in full.

The agreement before set out shows that at the time these receipts were executed all of the parties believed that the United Mutual Company was liable on its policy, and this mutual mistake induced the execution

by the defendant in error of the release relied on by plaintiffs in error to defeat their liability to defendant in error for the balance of the agreed loss. It seems to us that the mere statement of the facts fully answers the contention of plaintiffs in error. It is unnecessary to cite authority on the proposition that an agreement or contract executed under a mutual mistake can be set aside on that ground.

[6] In addition to this, the rule that where a fixed sum is due the release of the entire sum upon a payment of a part is without consideration as to the unpaid portion is applicable in this case.

In the case of Fire Insurance Co. v. Wickham, 141 U. S. 564, 9 Sup. Ct. 113, 35 L. Ed. 860, the Supreme Court of the United States thus states the rule:

"The rule is well established that where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void."

The rule announced in the above citation has been followed by numerous decisions of our appellate courts. Some of these decisions are Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014; Woodall v. Ins. Co. (Tex. Civ. App.) 79 S. W. 1090; Bergman Produce Co. v. Brown (Tex. Civ. App.) 156 S. W. 1102; Ins. Co. v. Mount Castle (Tex. Civ. App.) 200 S. W. 862; Ins. Co. v. Connor (Tex. Civ. App.) 209 S. W. 417.

[7] Plaintiffs in error insist that this case is not within the rule above stated; because the agreement to pay the $46,310 was made in compromise of a bona fide dispute between the parties as to the amount of the loss. In support of this contention a statement from the agreement is quoted which shows that when proof of loss was presented to the adjuster it was agreed that the value of the stock before the fire was $46,310 and that defendant in error claimed that the injury and loss to said stock was $34,416.15 and plaintiffs in error's adjuster estimated the loss

and offered to pay $23,155 and that in settlement of this dispute plaintiffs in error agreed to pay defendant in error the agreed value of the stock before the fire and were to receive the proceeds of the sale of the damaged stock.

We do not think this can be regarded as a compromise of a dispute as to the amount of the loss. Neither party surrendered or gave to the other any portion of their respective claims. All that they did was to agree upon a method to ascertain the exact amount of the loss. This method was pursued and settlement thereafter made in accordance with the result declared. The agreed statement of facts shows that the loss as thus ascertained was the exact loss sustained by the defendant in error and no issue as to the amount of loss is presented by the record.

[8, 9] The provision in each of the policies issued by plaintiffs in error that the company issuing the policy "shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property," cannot be construed as relieving plaintiffs in error from liability for the proportionate amount of the loss that was at first supposed to have been due by the United Mutual Company. Defendant in error did not hold an "invalid" policy in that company at the time of the loss, but had no policy of insurance in said company. We think the assignment complaining of that feature of the judgment charging plaintiffs in error with interest on the amount due by them from the date of the fire should be sustained. Under the provisions of the policies any loss sustained by the defendant in error was not payable until 60 days after proof of loss was made as required by the policies, and interest should only be charged from the time the loss was payable.

[10] There was no error in charging plaintiffs in error as a part of the costs of this suit $100 allowed the garnishee for filing answers in the garnishment proceedings which were ancillary to the main suit.

We are of opinion that the judgment should be reformed as above indicated as to the matter of interest, and as so reformed should be affirmed; and it is so ordered.

Reformed and affirmed.