### AMERICAN NAT. INS. CO. v. CLEVELAND et al.*

No. 12679.

Court of Civil Appeals of Texas. Fort Worth.

May 14, 1932.

Rehearing Denied June 18, 1932.

**328**

Lee, Lomax & Wren and John F. McRae, all of Fort Worth, for appellant.

Cantey, Hanger & McMahon, of Fort Worth, for appellees.

DUNKLIN, J.

The American National Insurance Company has appealed from a judgment against it in favor of Ethel Cleveland, joined by her husband, Ellis Cleveland, as plaintiffs on three insurance policies, issued by it upon the life of Ellis Cleveland, Jr., the son of plaintiffs.

The case was tried before the court without a jury, and the following are findings of fact and conclusions of law by the trial judge upon which the judgment was based:

"Findings of Fact.
"I find:

"1. The defendant issued three policies of insurance upon the life of Ellis Cleveland, Jr., said policies being numbered and issued upon the dates as follows:

"No. 3647862, date issued, January 19, 1925.

"No. 3830033, date issued, July 13, 1925.

"No. 4471797, date issued, November 1, 1926.

"Under said policies and the schedule contained therein there was due upon the death of said Ellis Cleveland Jr., under the first of said policies above mentioned the sum of $525.00, and under the second of said policies above mentioned the sum of $188.00, under the third of said policies the sum of $108.00, making a total of $901.00; the plaintiff, Ethel Cleveland, the mother of the assured was named as beneficiary in each of said policies, and by virtue of said policies the defendant agreed to pay to the said Ethel Cleveland the sum of $901.00, immediately upon proof of the death of the said Ellis Cleveland, Jr.

"2. The weekly premium provided for in said policies was paid regularly from the respective dates of issuance of said policies down to the week beginning August 11, 1930.

"3. On, towit, about September 17, 1930, the plaintiff Ellis Cleveland, Sr., offered to pay L. S. Parker, Assistant Superintendent of the defendant, and Butcher, each an agent of defendant, the premiums due. At that time Ellis Cleveland, Sr., offered to pay to the said L. S. Parker the premiums then due upon each of said policies, and told him (Parker) that he did not want to drop said policies but wanted to continue them in force and effect, and to continue to pay premiums thereon.

"4. Said Parker agreed to accept said premiums and to continue said policies in effect, knowing at that time that more than thirty days had elapsed since the last premium payment had been made and that the premiums on said policies were more than thirty days past due. The said L. S. Parker did not take the money for said premiums at that time because he did not have the agent's book in his possession there at Arlington in which to make the notation of collection which the rules of the company required.

"5. He promised and agreed with the plaintiff Ellis Cleveland, Sr., that he or the agent Butcher would call at the home of the plaintiffs near Arlington on Friday, September 19th and collect said premium, and that the plaintiffs need not worry, that everything was all right and the policies would be continued in force and effect.

"6. The said L. S. Parker was acting in the scope of his authority and employment with the defendant, and was also acting in the apparent scope of his authority and employment.

"7. The plaintiffs relied upon said statement and promise and agreement, and made no further effort to pay the premiums due on said policies until the following Sunday, September 21st, that the plaintiff Mrs. Ethel Cleveland, was at home at the place where the said L. S. Parker agreed to call and collect said premium on Friday, September 19th, and on September 20th, and was ready and willing and able to pay the premiums.

"8. Neither L. S. Parker nor the Agent Butcher, nor any other agent of defendant called or came to the home of the plaintiffs on either the 19th or 20th, or until after the insured was dead.

"9. During all of said time and up to Monday September 22nd at noon the insured Ellis

Cleveland, Jr., was in sound health and was a good insurable risk, and was in an insurable condition.

"10. After said L. S. Parker, or any other agent of defendant, failed to call at the home of the plaintiffs to make such collection on either Friday or Saturday of said week, plaintiff, Ellis Cleveland, Sr., gave the amount of premiums due to Joe Lasseter who visited at his (Ellis Cleveland, Sr.) home on Sunday, September 21st, for the purpose of having said sum paid as premiums on said policies on the next day, towit, Monday, September 22nd, to the defendant in Fort Worth; said Joe Lasseter was then expecting to be in Fort Worth on said Monday, and agreed to pay said premiums for plaintiffs.

"11. On the evening of Monday, September 22nd, said Joe Lasseter paid the said $2.00 to the wife of one of defendant's agents, A. T. Thompson, at the home of said agent; that said $2.00 was thereafter transmitted by the said A. T. Thompson to the District Office of the defendant in Fort Worth, and said $2.00 was received by the defendant prior to the death of Ellis Cleveland, Jr., and said payment was by the defendant entered upon its books as having been received on September 22, 1930, although not actually received in the office until the morning of the 23rd.

"12. On Monday, September 22, 1930, about 12 o'clock, noon, the insured Ellis Cleveland, Jr., was injured by the kick of a donkey and carried to the hospital.

"13. On Monday night about 8 o'clock the said Joe Lasseter delivered the full amount of premiums to Mrs. A. T. Thompson, wife of an agent of the defendant, who delivered the same to her husband, and he in turn on the morning of the 23rd of September delivered the said full amount of premiums to the defendant at its office in Fort Worth, who received the same and entered said amount on their books.

"14. On said night and said morning following, neither Joe Lasseter or Thompson, nor any of the agents of the defendant knew that Ellis Cleveland, Jr., had been injured.

"15. Ellis Cleveland, Jr., died on September 23, 1930, after said amount had been received by the defendant and placed on their books.

"16. Defendant received said payment on the 23rd day of September, 1930, intending to continue the policies in full force and effect on the assumption that the said Ellis Cleveland, Jr., was then an insurable risk and in an insurable condition.

"17. After the defendant knew that the insured was injured this money was deposited along with their other funds in the bank in the name of the manager of the Fort Worth Office of the defendant.

"18. No tender of return of the amount paid was made by the defendant until after demand for payment of the policy was made by the beneficiary.

"19. The plaintiffs submitted a full proof of death on forms satisfactory to the defendant, and more than thirty days prior to the institution of this suit demanded in, writing the payment by the defendant of the sum of $900.00 which was refused.

"20. Reasonable attorneys' fee for the plaintiffs in this suit is $275.00.

"21. The legal or cash reserve to the credit of each of said policies on August 11, 1930, was sufficient to purchase extended insurance in the sum of $901.00 upon said policies for a period of time extending beyond September 23, 1930.

"22. The reserve value of said premiums paid on these policies was sufficient to purchase paid-up insurance in the sum of $78.00, which sum was tendered by the defendants to the plaintiffs prior to the institution of this suit.

"Conclusions of Law.

"I conclude:

"1. The promises of Butcher and Parker to call at the home of Cleveland for the unpaid premiums, their failure to do so, and the reliance of the Clevelands upon the said promise estops the defendant to say that the said premiums had not been paid, and to deny that said policies were in full force and effect when the insured died.

"2. Subdivision 9 of article 4732, Revised Statutes of 1925, provides for extended insurance in the event of default, and thereby makes this policy extended by law, and in full force on the death of Ellis Cleveland, Jr.

"3. Butcher and Parker had authority to extend the time of the payment of these premiums until they should call on the plaintiffs therefor, as such promise was made in this case.

"4. The defendant, by the promises of Parker and Butcher to call at the home of the plaintiffs for the premiums, waived their payment until such call.

"5. The policies were in full force and effect upon the date of the death of Ellis Cleveland, Jr.

"6. The plaintiffs are entitled to recover the full amount of said policies, 12% penalty and $275.00 attorney's fees, and interest from the date of furnishing proof of loss."

The defendant pleaded the following provisions in each of the policies sued on:

"Agreements and Conditions.

"First. All premiums are payable at the Company's Home Office, but may also be paid to an accredited representative of the company. Payments to be recognized by the Company must be entered when paid in the premium receipt book belonging with the policy. If for any reason the premium is not

called for when due, by an accredited representative of the company, it shall be the Policyholder's duty, before said premium shall be four weeks in arrears, to bring said premium to the company's home office or to one of its district offices. * * *

"Seventh. This policy is issued upon an application which omits the warrant usually contained in applications, and contains the entire agreement between the Company and the insured and the holder and owner hereof. All statements made by the Insured in the application herefor shall, in the absence of fraud, be deemed representations and not warranties. Its terms can not be changed or conditions varied, except by a written agreement, signed by the President or secretary. Therefore agents (which term includes Superintendents and Assistant Superintendents) are not authorized and have no power to make, alter or discharge contracts, waive forfeitures, or receive premiums on Policies in arrears more than four weeks or to receipt for same in the Receipt Book, and all such arrears given to an agent shall be at the risk of those who pay them, and shall not be credited upon the Policy, whether entered in the Receipt Book or not.

"Eighth. If for any reason this Policy becomes lapsed and out of benefits, the Company will consider reinstatement on receipt of the premiums in arrears accompanied with satisfactory evidence of insurability according to the Company's standard. A reasonable time will be required for consideration of said revival application, and if accepted the Policy will be revived subject to the following conditions, which will be endorsed on the policy, towit:

"The Company assumes no liability whatever under this Policy unless on the date of the revival the Insured is alive and in sound health and insurable according to the Company's standard of insurability, as provided at original date of issue."

The defendant alleged that the policies were not reinstated within the four weeks next succeeding August 11, 1930, and therefore they lapsed and were of no further force and effect, according to the express stipulations of the contracts of insurance.

Plaintiff pleaded a waiver of that defense and estoppel to assert it, alleging, substantially, the facts found by the trial judge as a basis for sustaining that plea; and in that connection he further invoked the provision of the policies under the heading "Privileges & Concessions," reading as follows: "Reinstatement—The Insured out of benefit may be reinstated upon payment of back premiums in full, and upon passing a satisfactory medical examination (but such an examination may be waived by the company if it desires to do so)."

The principal question to be determined on this appeal is whether or not the action of the trial court in sustaining the plea of waiver and estoppel was erroneous.

Although the testimony was not sufficient to support the finding that defendant's agent Parker promised plaintiff Ellis Cleveland that if the $2 premium was paid then the policies "would be continued in force and effect," yet further testimony as to what Parker said was substantially to the same effect.

■ Assignments of error to the admission of the testimony by plaintiffs Ellis Cleveland and Mrs. Ethel Cleveland as to statements made to them by defendant's representatives Parker and Butcher with reference to the payment of the past-due premiums and the assurance given that the same would be accepted as a credit upon the policies, and plaintiffs' reliance thereon, substantially all of which are set out in the court's findings of fact, are all overruled because they were clearly admissible on the plaintiff's plea of waiver and estoppel.

■ And there is no merit in the further complaint of error in the admission of the testimony of the witness Joseph Lasseter to his delivery of the $2 to Mrs. Thompson to be by her delivered to the office of the defendant company in Fort Worth, since the plaintiffs had the right to show that the premiums finally reached the defendant's proper office through that channel.

■■ The defendant had its home office in Galveston, Tex., and was engaged in writing industrial policies of life insurance for weekly premiums; and its district office in Fort Worth was under the direction of J. S. Thomas. Parker was assistant superintendent to Thomas, and he wrote two of the insurance policies. Thomas and Butcher were accredited agents of the company and they were authorized to collect insurance premiums and also to use their efforts to get policyholders to reinstate policies that had lapsed. Until a short time before the death of the son, Ellis Cleveland, Jr., plaintiffs had lived in the town of Arlington but moved out in the country near that town and the premiums on these policies had been collected by some of defendant's agents by calling at plaintiffs' home in Arlington, and when collected the same would be noted in a receipt book usually carried by the agent. The defendant had no representative in Arlington and the collection agents worked out of the district office in Fort Worth in territories assigned to them. Those facts, in connection with further facts that after the $2 in premiums were paid to Parker he turned them in to the company's office at Fort Worth, where they were credited to the policies and afterwards deposited in the bank along with other funds of the company after the death of plaintiffs' son and after Thomas, the superintendent in charge of

the Fort Worth office, had been informed of his death, were clearly sufficient to support the court's finding that the negotiations had by Parker and Butcher with plaintiffs with respect to the payment of the past-due premiums were within the scope of the authority given to them by the defendant as its agents. And in this connection we will add that the provisions in the policies attempting to deny all agents of the company authority to waive forfeitures or to receive premiums on policies in arrears more than four weeks, or to receipt for the same, are unenforceable as against the plea of waiver and estoppel; since the act of the agent within the scope of his employment at the date of the act will bind the principal. Niagara Ins. Co. v. Lee, 73 Tex. 646, 11 S. W. 1024; Morrison v. Ins. Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Wagner & Chabot v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S. W. 569; Law v. Texas State Mutual Fire Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539; U. S. Fidelity & Guaranty Co. v. Taylor (Tex. Civ. App.) 11 S.W.(2d) 340; Am. Nat'l Ins. Co. v. Bailey (Tex. Civ. App.) 3 S.W.(2d) 539; Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; article 5056, Rev. Civ. St. 1925; Cyc. Insurance Law, vol. 2, § 522E.

In Wichita Home Ins. Co. v. Montgomery (Tex. Civ. App.) 4 S.W.(2d) 1041, 1045 (writ of error dismissed), the following is cited with approval from 3 Joyce on Insurance, par. 1356: "If an insurance company or its authorized agent, by its habit of business, or by its acts or declarations, or by a custom to receive overdue premiums without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy expressly provides for forfeiture for nonpayment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures, and even though the policy provides that receiving overdue premiums is merely an act of courtesy."

Other authorities to the same effect are Sovereign Camp, W. O. W., v. Putnam (Tex. Civ. App.) 206 S. W. 970; Law v. Texas State Mut. Fire Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539; McCorkle v. Texas Benev. Ass'n, 71 Tex. 149, 8 S. W. 516.

In Home Ben. Ass'n of Brazos County v. Catchings (Tex. Civ. App.) 38 S.W.(2d) 386, 387 (writ refused), the following was said: "The acceptance of an overdue premium or assessment by an insurance company or mutual benefit association waives the right to forfeit the insurance under the terms of the policy or certificates for nonpayment. And manifestly the unequivocal acts of appellant in accepting the check of December 5, 1929, and the mailing of notice of assessment 164 on December 20, 1929, with full knowledge that the policy was forfeited under its terms for failure to pay the annual dues and certain assessments which its books showed to be unpaid, evidenced the intention on the part of appellant to treat the policy as binding after the dates on which, under its terms, it would be forfeited, and such conduct on the part of appellant amounted to a waiver of any forfeiture provision for such nonpayments. Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 147 S. W. 1152, and 152 S. W. 625; Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101; Stone v. Brady Mutual Life Ins. Ass'n (Tex. Civ. App.) 2 S.W.(2d) 538."

In that case it was further held that the waiver was accomplished notwithstanding the fact that the insurer did not know at the time it received the checks and appropriated the proceeds thereof that the insured was then dangerously ill and that the policy which had theretofore lapsed could not be reinstated except upon the furnishing of a medical certificate showing good health of the insured, since the act of the company in receiving and appropriating the proceeds of the check with knowledge of the fact that the policy had by its terms already lapsed for nonpayment of premiums, as such conduct evidenced a purpose to maintain the insurance in force, again citing Equitable Life Assur. Soc. v. Ellis, supra.

Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 1153, 152 S. W. 625, was a suit by Mrs. Amanda M. Ellis against the Equitable Life Assurance Society to recover $25,000 on a life insurance policy issued by the defendant on the life of Caswell G. Ellis, the plaintiff's son; she being the beneficiary named in the policy. Default was made in the payment of the premium due on the policy March 24, 1906, and the thirty days' grace provided for in the policy for the prevention of a lapse of the policy by the payment of the premium expired April 23, 1906, and no premium was paid thereafter. Ellis was shot on May 11, 1906, and died from his wound the following day. The policy contained this provision: "This policy shall lapse and together with all premiums paid thereon shall forfeit to the society on the nonpayment of any premium when due."

That provision and the default in the payment of the premium was urged by the defendant as a bar to recovery. In reply plaintiff pleaded a waiver of that defense by reason of negotiations had by the company with Ellis concerning the premium and its pay-

ment, which continued down to and included May 9th. It appeared that Brophy, the company's superintendent at its home office in New York, wrote a letter to Ellis on April 25, two days after the policy, according to its terms, had lapsed. After maturity of the premium falling due on March 24, and within the period of thirty days' grace further allowed for its payment, Ellis wrote to Wyman, cashier of the company, requesting a loan from the company upon the hypothecation of the policy as security in order to enable him to pay the premiums. In reply by letter Wyman offered to grant the loan upon certain conditions. Other letters passed between Ellis and Wyman in an effort to reach an agreement as to the amount of money to be loaned by the company and whether or not all of it was to be applied to the payment of the premiums in the future as well as those already due. Finally, on May 9, 1906, Wyman, the cashier, wrote a letter which contained this statement: "The society is willing to lend you $1,159 on the policies to apply towards the payment of premiums due a short time ago."

In an able and exhaustive opinion by Chief Justice Phillips, which is a classic in our jurisprudence, it was held that by the letter last noted the policy was recognized as still valid and convertible into a loan value notwithstanding the same had lapsed according to its terms and that that letter was legitimate evidence of the waiver pleaded, and this was further said:

"It is urged by the learned counsel for the company that this proposal to make the loan and all offers made by Wyman after April 23, 1906, the expiration of the period of grace provided in the policy, must be construed as having relation to a reinstatement of the policy under the reinstatement provision and as having been made on condition that Ellis would comply with that provision by furnishing evidence of good health satisfactory to the company. But this would attach a condition that the proposal itself did not impose. There is no suggestion in either letter written by Wyman to Ellis after April 23, 1906, that Ellis would first have to comply with that provision, or that the policy would first have to be reinstated under it. In neither letter is there any reference at all to that provision. Nor in Brophy's letter is there any such suggestion or reference. The proposal was absolutely unconditional except with respect to the payment by Ellis of the amount required 'to complete the transaction,' and is not open to other construction.

"The identical offer had been made before the expiration of the period of grace and before the policy had lapsed, and in the renewed offer of May 9th there is nothing to indicate that the status of the policy in the estimate of the company was in any respect different from its status during the period of grace. It was then recognized by the company as an existing policy, and, as the letter precludes the view that the attitude of the company toward it had undergone any change, it must be held that on May 9th the company still recognized it as an existing policy.

"It was forcibly emphasized in argument by counsel that Ellis was at no time misled by the company, and, although the company was endeavoring in this negotiation to provide a way for the continuance of the insurance, at no time did he comply with any of its proposals but at all times refused to act upon any of them. That he was not misled at any stage of the negotiation would be a conclusive argument were the question before us merely one of estoppel. But the question here is one of waiver, and it was not necessary for Ellis to have been misled for a waiver of the forfeiture to be accomplished. The issue of waiver is not to be determined by what Ellis did or omitted to do. It should be considered only in the light of what the company did. Ellis had no power to waive the forfeiture, and his conduct or mental condition could have had no probative force upon the question as to what the company did or intended to do, or upon the effect to be given its action. It alone had the power to waive. Its action alone could constitute a waiver. Waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by a consideration, nor is it essential that it be based upon an estoppel. It is certainly true that this insurance would not have continued in force indefinitely without Ellis' payment of the premium or its adjustment in some manner satisfactory to the company, but it cannot be doubted that he was entitled to a reasonable time after his receipt of the letter of May 9th within which to either pay the premium or adjust it in the way the letter proposed. If he had failed to do so within such time, the right still inhered in the company to declare and enforce the forfeiture notwithstanding it had theretofore waived it.

"The waiver was completed by the act or conduct of the company that constituted it. It was operative for a reasonable time thereafter, and during such period, within which Ellis had the right to avail himself of it and adjust the premium in the manner proposed, the policy would be considered as existing and in force."

To the same effect see, also, Dunken v. Ætna Life Ins. Co. (Tex. Civ. App.) 221 S. W. 691; State Life Ins. Co. v. Nolen (Tex. Com. App.) 24 S.W.(2d) 22; Stone v. Brady Mutual Life Ins. Co. (Tex. Civ. App.) 2 S.W.(2d) 538.

■ Since the assurance by Parker and Butcher to the plaintiff Ellis Cleveland that the policy would be reinstated upon the payment of the $2 premiums was unconditional, we overrule the further contention of appellant that that assurance must necessarily have been understood and construed as conditioned upon a reinstatement of the policy in accordance with the requirements of those provisions contained in it and noted above. The foregoing excerpt from the opinion in the Ellis Case conclusively overcomes that contention, since the assurance so given was not made with that qualification.

As we construe them, the decisions relied on by the appellant such as Columbian Nat'l, Fire Ins. Co. v. Dixie Co-op. Mail Order House (Tex. Civ. App.) 261 S. W. 174, and Id. (Tex. Com. App.) 276 S. W. 219; Ætna Ins. Co. v. Richey (Tex. Civ. App.) 206 S. W. 383; Republic Ins. Co. v. Moss (Tex. Civ. App.) 235 S. W. 700, are not in conflict with the principles upon which the foregoing authorities are based.

■ The assurance given to the plaintiffs by Parker and Butcher, the duly accredited agents of the defendant, while acting in the scope of their authority, that the policy would be reinstated upon the payment of the premium of $2 and the payment of that premium according to the understanding therefor and the receipt of the same by the accredited agents of the defendant, and the deposit of the same with the other funds belonging to the company after knowledge of the death of plaintiff's son, was a recognition by the defendant of the validity of the policy for the purpose of reinstatement and supported the court's conclusion that thereby the defendant waived the right to defeat a recovery by reason of the fact that the policy by its terms had lapsed for nonpayment of premium and had not been reinstated in accordance with the strict provisions of its terms set out above; and also support the further findings of estoppel to set up that defense.

The following agreement of counsel was introduced upon the trial:

"That the remaining reserve on each of the policies above described, after deduction of the 2½% Statutory Surrender Charge was sufficient to purchase extended or term insurance in an amount equal to the face value of each of said policies for a term beginning on August 11, 1930, and extending to and beyond September 23, 1930.

"This agreement is made without prejudice to the contention of the defendant that there was and is no duty imposed upon it under the provisions of said policies or by virtue of the Statutes of the State of Texas relating to Insurance Policies, to apply the reserve on the above described policies to the purchase of extended or paid up insurance; the defendant at all times denying that the Statutes of the State of Texas impose any such duty upon it and contending that the provisions of the insurance policies, themselves, provide otherwise.

"It is further in this connection agreed that it is the contention of the defendant that under the terms and provisions of the said insurance policies, and under the Table of Values as contained in such policies, the amount of paid up insurance due under Policy No. 3647862 is and was $51.00, and the amount of paid up insurance under Policy No. 3830033 is and was $19.00, and the amount of paid up insurance under Policy No. 4471797 is and was $8.00, and that such amounts are admitted by the defendant to be due and owing to the plaintiffs under the terms of the said policies and such amounts have been heretofore duly and legally tendered to the plaintiffs and the tender refused by them.

"This agreement is also made without prejudice to the right of the plaintiffs to contend that the amount of paid up insurance due under the terms of said policies is more than the amounts tendered by the defendant."

Based on the facts embodied in that agreement, appellant has assigned error to the conclusion of the trial court stated in paragraph 2 of his conclusions of law, to the effect that by virtue of subdivision 9 of article 4732, Rev. Civ. Statutes, the policies in suit were extended and were in full force and effect at the time of the death of Ellis Cleveland, Jr. And in support of that assignment appellant insists that under that statute plaintiffs' right of recovery was limited to $78, the aggregate of the sums shown in the agreement, with interest, citing Gilley v. Mo. State Life Ins. Co., 116 Tex. 43, 273 S. W. 825, 285 S. W. 807.

A determination of the merits of this assignment is pretermitted as unnecessary in view of our conclusion that the judgment of the trial court should be affirmed for the reasons noted above.